INHABITANTS of ISLESBOROUGH

*vs.*

INHABITANTS of LINCOLNVILLE.

Waldo.    Opinion January 1, 1885.

*Pauper.    Settlement.    Supplies to a person, non compos.*

A person, *non compos mentis*, who continues to reside with and be dependent upon his father for guidance and support by reason of mental imbecility, after he arrives at full age, and the conditions of filial subjection, dependence, parental control and support continue to subsist as before, is not thereby emancipated.

Such person, not emancipated, cannot acquire an independent settlement by residence in a town for five successive years, but will follow the settlement of the father.

Necessary supplies furnished by a town to such person will be deemed supplies furnished indirectly to the father, and will operate to prevent his gaining a settlement.

ON REPORT.

Assumpsit for pauper supplies, furnished Georgiana Ryder. The opinion states the facts.

*Joseph Williamson*, for the plaintiffs.

In the cases which hold that supplies furnished a *non compos* child prevents the father from gaining a settlement it appears that the supplies were furnished with the knowledge of the father. See *Dixmont* v. *Biddeford*, 3 Maine, 205 ; *Garland* v. *Dover*, 19 Maine, 441 ; *Clinton* v. *York*, 26 Maine, 167 ; *Bangor* v.

*Readfield*, 32 Maine, 60 ; *Tremont* v. *Mt. Desert*, 36 Maine, 390 ; *Eastport* v. *Lubec*, 64 Maine, 247 ; *Berkeley* v. *Taunton*, 19 Pick. 480 ; *Taunton* v. *Middleborough*, 12 Met. 35 ; *Charlestown* v. *Groveland*, 15 Gray, 15 ; *Woodward* v. *Worcester*, 15 Gray, 19 ; *Wareham* v. *Milford*, 105 Mass. 293.

In this case there is not sufficient evidence of knowledge by the father that his daughter was supported by the town after her removal to Islesborough in 1875. He had seen her but three times. True, he said that he understood all the time since she left his house, that she was being supported by the town. But there is a wide difference between one's knowledge of a thing, and what he understood it to be. Knowledge as defined by Webster "is a clear and certain perception of that which exists;" while to understand "is to have just and adequate ideas of ; to comprehend ; to know ; to know by experience ; by instinct ; to learn ; to be informed. "Understanding," says Mr. Crabbe, "is employed soley on external objects ; we understand that which actually exists before us, and presents itself to our observation."

The father knew or he did not know. He was a witness. If he did know, why did he not definitely say so ? The presumption is that he did not have any such knowledge as is required, or the question would have been clearly asked and unequivocally answered.

*William H. Fogler*, for the defendants.

FOSTER, J. The only question involved in this case relates to the settlement of Georgianna Ryder, and to recover pay for the amount of supplies furnished for her support in the plaintiff town, this action is brought.

The pauper was born May 16, 1842, is *non compos mentis*, and the legitimate child of Thomas Ryder, whose settlement was in Islesborough, where he lived until April 15, 1864, when he moved to Lincolnville, and has resided there since that time. Up to the time of his removal from Islesborough, he had never received any aid as a pauper for himself or any member of his family. This daughter had always lived in his family, and when he moved to Lincolnville, he took her with him. In 1864, shortly after the

removal to Lincolnville, the step-mother of the daughter, with the knowledge and consent of said Thomas Ryder, called for aid for the support of the alleged pauper, which was furnished by Islesborough continuously from that time till May 7, 1875, the daughter continuing to live in the family, at which time she was removed to said town of Islesborough, and has there been supported by that town ever since.

The pauper became of age May 16, 1863, and she then had the settlement of her father, which was in the plaintiff town. Has she, since she became of age, acquired a settlement in the defendant town?

We think not.

The plaintiffs contend that the pauper, being *non compos mentis*, takes the settlement of her father, and that he has gained a settlement in the defendant town by having his home therein for five successive years, notwithstanding the support furnished by the plaintiffs as pauper supplies to this daughter for more than eighteen years.

In support of this proposition it is not claimed on the part of the plaintiffs that the pauper has ever been emancipated, but that the supplies furnished the pauper have been so furnished as not to affect, directly or indirectly, the settlement of the father, they not being, in contemplation of law, supplies furnished to him.

This proposition does not depend merely upon the statement of it for its soundness, but rather upon the legal as well as social relations which the father and child respectively bore towards each other, and the knowledge on his part of the necessity and furnishing of those supplies.

It has long been the settled law in this state that the furnishing of supplies to a minor child, not a member of the father's family, and not under his care and protection, whether this absence and lack of care be on account of the child's own fault or the neglect of the father and without his knowledge or consent, by a distant town where the child may happen to fall into distress, while the father has sufficient means and is willing to support the child in his own house, is not such furnishing of supplies to him as would prevent him from acquiring a settlement to which he would

otherwise be entitled. *Eastport* v. *Lubec,* 64 Maine, 246; *Bangor* v. *Readfield,* 32 Maine, 60.

In the case before us the pauper, though more than twenty-one years of age, was *non compos mentis,* and, in her legal relations pertaining to pauper settlements, would stand upon the same footing as if she had been a minor. *Wiscasset* v. *Waldoborough,* 3 Maine, 388; *Croydon* v. *Sullivan,* 47 N. H. 184; *Tremont* v. *Mt. Desert,* 36 Maine, 393; *Monroe* v. *Jackson,* 55 Maine, 58.

It therefore becomes necessary to understand the *status* of this *non compos* daughter in her relations to her father before and at the time the supplies were furnished to her.

She had continued to reside in her father's family, after arriving at the age of twenty-one years, up to May 7, 1875, receiving support from the plaintiff town the eleven years prior to that time and while living with her father, and was then taken to the plaintiff town, as the evidence shows, that she might be supported at less expense and trouble to the town. It was with the father's knowledge and consent that the supplies were called for in the first instance. He states that he called for assistance from the town because he was not able to support her, and understood at the time she was removed, that she was to be supported by the town. It can not, therefore, be reasonably said that the father was ignorant of the fact that the supplies were furnished to his daughter during the time she was residing in his family, and that, after her removal, she was being supported as a pauper in Islesborough.

Hence, we say that the supplies in this case cannot be considered as having been furnished without the knowledge of the father; and the removal of the pauper by the town officers and her maintenance in the town of her lawful settlement, on account of his inability to support her, can not be regarded as an abandonment by him of his child, who, by reason of mental imbecility, is compelled to remain dependent upon him for her guidance and support. She was taken from him by operation of law, and not because he had abandoned her or she had abandoned him. "The parental and filial relations were not broken up, but suspended during the subjection of the children to the care of the overseers

of the poor for their support." *Sanford* v. *Lebanon*, 31 Maine, 128; *Garland* v. *Dover*, 19 Maine, 446; *Tremont* v. *Mt. Desert*, 36 Maine, 393. These relations did not cease to subsist by reason of the mental weakness of the child or of the poverty of the father. Had he been of sufficient ability he might have been compelled to provide support to this dependent child, or to pay the expenses incurred for her support. Even in cases of extreme destitution resulting in absolute pauperism of the parent and the binding out of the child to service by the overseers of the poor of the town where such child has a lawful settlement until it arrives at the age of twenty-one years, does not emancipate the child, nor necessarily break up those relations, though they are suspended during the continuance of such service. Should the child be discharged from its indenture and the parent become of sufficient ability to furnish support to the child during its minority, the filial and parental relations would be reinstated and subsist as fully as if they had never been interrupted through poverty. *Oldtown* v. *Falmouth*, 40 Maine, 108; *Hampden* v. *Troy*, 70 Maine, 493.

Nor does it appear that the father ever intended to abandon this child, or consent to her emancipation. And without such consent, either express or implied, there can be no emancipation. On the contrary, although his visits may not have been so frequent as to imply the deepest affection for his unfortunate child, yet the fact that they were made, however prolonged may have been the length of time between them, is corroborative of that which is claimed by the defense — that there had never been any emancipation or abandonment of her by the father, and that the supplies thus furnished the daughter were supplies furnished indirectly to the father, and which prevented him from gaining a settlement in Lincolnville.

Consequently the result must be the same in law as if the daughter had continued to reside in the family of the father, dependent upon him for her support, and in such case the authorities hold that "where the parental and filial relation continues to subsist, and there has been no emancipation or abandonment, and the circumstances are such as to make it

evident that the father has knowledge of the necessities of the child, and he fails to supply those necessities, and they are supplied by the town officers, acting in good faith to relieve a case of actual want and distress, the supplies thus furnished will be deemed supplies furnished indirectly to the father, and will operate to prevent his gaining a settlement." *Eastport* v. *Lubec*, 64 Maine, 247; *Tremont* v. *Mt. Desert*, 36 Maine, 393.

Nor would the plaintiffs' case stand in any better light were we to regard the daughter as *emancipated*, and thereby capable gaining a settlement in her own right. The settlement of the father, as well as that of the daughter, was in the plaintiff town at the time of their removal therefrom in 1864. From that time forward, with the exception of about two months, the plaintiffs have furnished support to Georgianna, not only during the eleven years that she lived in the defendant town, but since that time while living in Islesborough. She could not, therefore, have gained a settlement in Lincolnville while being thus supported as a pauper by Islesborough.

Upon a careful examination of the authorities to which our attention has been called by the counsel for the plaintiffs, it will be found that they do not conflict with the principles here laid down.

*Judgment for the defendants.*

PETERS, C. J., DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.